UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CELIA WASHINGTON,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

_____/

Civil Case Number 19-11235
Criminal Case Number 17-20662
Honorable David M. Lawson

## **OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE**

Petitioner Celia Washington pleaded guilty to conspiracy to engage in bribery in connection with a program receiving federal funds. She was the Deputy Chief of Police and legal advisor to the Chief of Police for the City of Detroit at the time of the offense. She was sentenced to a year and a day in prison, followed by a term of supervised release. She did not appeal her conviction or sentence.

Washington now moves to set aside her sentence and conviction, raising five arguments set out in detail below. Because all of those arguments could have been raised on direct appeal, and Washington has not identified a valid reason for her failure to do so, her motion will be denied.

I.

Washington was charged with accepting bribes in violation of 18 U.S.C. § 666 and conspiracy. She pleaded guilty to the conspiracy count, and the government agreed to dismiss the other count.

During the plea hearing, the Court confirmed that Washington was an adult (57 years old), completed post-secondary education including a law degree, and is fluent in English. She confirmed that she never has been treated for any problems with substance abuse, and she was not under the influence of any drugs or medications. She also acknowledged that she had received

and reviewed with her counsel a copy of the indictment. She confirmed that she had decided it was in her best interests to enter a guilty plea, and she also represented that she wanted to withdraw several pretrial motions that her attorney had filed on her behalf. The Court then explained that Washington had the right to have the charges tried to a jury, that she would be represented by counsel at no expense to her if she chose to go to trial and could not afford counsel of her choice, and that she had the right to confront all of the government's evidence and witnesses at trial, along with the right to call witnesses in her defense, who could be subpoenaed to appear and testify. Washington expressed her desire to waive all of those trial rights and enter her plea of guilty instead.

During her allocution, Washington stated that she understood all of the elements of the federal conspiracy and bribery charges framed by the indictment, and that she believed that if the case went to trial the government could prove the elements of the charged conspiracy beyond a reasonable doubt. Plea Hr'g Tr., ECF No. 32, PageID.418. Washington acknowledged that during 2015 she was a Deputy Chief of Police with the Detroit Police Department, and she understood that DPD's parking enforcement program received more than $10,000 in federal funds. *Id.* at 419. In that role, she had responsibility for advising her superiors on questions about the towing rotation that the department used to ensure an "equitable distribution of towing opportunities." *Id.* at 419-20.

Washington admitted that, sometime in mid-2015, she was given an envelope containing between $3,000 and $4,000 in cash by Gasper Fiori, who was the owner of a towing company that was on the City's list of approved towers. *Id.* at 421, 423-24. Washington stated that the payment was given to her because Fiori believed that she had authority to influence the towing rotation, and he wanted her to employ that influence in his favor. *Id.* at 421-22, 426. She further admitted that

the value of a spot in the towing rotation could exceed $5,000 in a calendar year. *Id.* at 423. However, due to the indefinite nature of some of Washington's statements during her allocution, the Court found that her admissions were not sufficiently firm to make out a clear factual basis for the plea. But after a short continuance, Washington acknowledged on the record that she received money from Mr. Fiori and shortly thereafter learned that he gave it to her in an attempt to procure her influence over the towing. She said that she spent some of the money, and she never returned the cash to Mr. Fiori. *Id.* at 440.

On April 29, 2019, the defendant filed a motion to vacate her conviction and sentence under 28 U.S.C. § 2255 asserting five grounds for relief: (1) allegations that the defendant accepted "other things" of value from "other people" aside from one individual mentioned in the indictment never were presented to the grand jury, and evidence presented at sentencing that the defendant accepted cash from a person in exchange for favorable treatment in the City's towing company rotation was not presented previously "within the four corners of the indictment," (2) a grand jury witness testified falsely that the defendant had authority over the rotation of towing contractors, when other evidence shows that the defendant "was not the overseer" of the towing program, (3) the information presented at sentencing constituted a "variance from the indictment" in terms of the conduct for which the defendant was charged and the conduct for which she was sentenced, (4) the government's evidence that the defendant received a $3,000 cash bribe would not have been sufficient to establish at trial that the value of consideration corruptly exchanged exceeded the $5,000 statutory threshold for conviction under section 666(a), and (5) due to the preceding procedural defects, the defendant's plea was not knowingly and voluntarily entered, where she was not afforded sufficient notice of the actual charges against her prior to entry of her plea and sentencing.

II.

A federal prisoner challenging her sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). And she "must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process"). In *United States v. Frady*, 456 U.S. 152 (1982), the Supreme Court observed:

> Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims in a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal.

*Frady*, 456 U.S. at 164-65; *accord Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (stating that "respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal"). Where a defendant fails to assert claims on direct appeal and attempts

to raise them in a § 2255 motion, "[s]he also must show either that (1) [s]he had good cause for [her] failure to raise such arguments and [s]he would suffer prejudice if unable to proceed, or (2) [s]he is actually innocent." *Regalado*, 334 F.3d at 528.

All of the claims raised in Washington's collateral attack on her conviction and sentence are foreclosed because they were procedurally defaulted when she failed to raise them in this Court or on direct appeal. Washington could have raised all of the claims on direct appeal, but she chose not to do so. A motion under section 2255 may not do service for a direct appeal. *Ibid*. Washington also has failed to demonstrate cause, prejudice, or her "actual innocence" of the crime of conviction, as she must to overcome the procedural default of her claims.

Washington argues at some length in her reply that she has shown "cause" for the failure to raise her claims previously because after her conviction she obtained "new evidence" about multiple examples of false testimony given by a witness who appeared before the grand jury. However, even if Washington could establish cause for the failure to raise her claims in a timely appeal, she cannot establish prejudice because she plainly admitted facts that established all of the elements of the crimes at her plea hearing. *See Regalado*, 334 F.3d at 528 ("Assuming that Regalado could satisfy the cause requirement, we conclude that the prejudice hurdle nonetheless remains insurmountable when Regalado admitted to involvement with nearly 500 pounds of marijuana.") (rejecting a claim first presented on collateral review that the sentence unlawfully was increased on the basis of facts not tried to the jury, contrary to the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

"A conviction for federal-program bribery under § 666(a)(1)(B) requires proof that the defendant: (1) was an agent of an organization that received more than $10,000 annually in federal funds; (2) corruptly solicited or demanded for the benefit of any person or accepted, or agreed to

accept anything of value; and (3) acted with intent to be influenced or rewarded in connection with a transaction or business of the organization that involved property or services worth $5,000 or more." *United States v. Hills*, 27 F.4th 1155, 1181-82 (6th Cir. 2022). The offense of conviction in this case was conspiracy to commit federal-program bribery, which requires "proof that two or more people agreed to commit the substantive offense; [and] that the defendant knowingly and voluntarily joined the conspiracy." *Id.* at 1180. Washington's presentation in her motion and reply focuses on alleged deficiencies in the proof of her intent and the established value of the corrupt transaction. However, she has not put forth any evidence calling into question her own admissions that established the essential elements of the crime.

As to the first element, there is no dispute that DPD's parking enforcement program involved the receipt of at least $10,000 in federal funds. As to the third element, the defendant admitted — and no evidence has been offered to refute — that the potential value of a towing contract to a towing provider was in excess of $5,000 per year, because some towers in the rotation made at least that much in towing revenue. She also admitted plainly, and she does not now dispute, that she "agreed to accept" cash from Mr. Fiore, which she knew was offered for the purpose of procuring her favor and perceived influence over placement in the towing rotation. From the admissions that Washington received the funds, was aware of Fiore's intent, and never returned the funds (and later spent some of the money), it may be inferred that she agreed willingly to accept the funds and that she acted voluntarily in joining the agreement for the cash exchange. Similarly, Washington's admissions that she accepted the cash offered to her by Fiore, kept the money, and spent some of it, also show that she acted with an "intent to be rewarded" in connection with the transaction.

Washington further argues in her reply that she is "actually innocent" of the crime for which she was convicted, because (1) the government "failed to show" that the admitted potential value of a towing contract in excess of $5,000 does not comprise "bona fide salary, wages, or other compensation paid, or expenses paid or reimbursed, in the usual course of business," 28 U.S.C. § 666(c), and (2) her statements during allocution about her "awareness" of Fiore's intent to procure her influence do not establish that she had any "corrupt intent" when she received and retained a cash payment from him. However, at the sentencing hearing, there was evidence presented from wiretaps and intercepted emails in which Washington instructed Mr. Fiore to tell her what towing rotations he wanted to be placed in, that during the relevant timeframe the City had a policy prohibiting a single towing provider (or multiple towers under common ownership) from being placed in the rotations of more than one geographic precinct, and that subsequent to the communications Mr. Fiore was allowed to continue with several towing companies that he owned holding rotation spots in different precincts of the City, contrary to DPD policy. Sentencing Hr'g Tr., ECF No. 43, PageID.729-31. Contrary to Washington's argument, that evidence is sufficient to rebut any claim that amounts received by Fiore under his multiple towing contracts were "bona fide compensation." Furthermore, proof that a defendant accepted bribes while overlooking a participant's subversion of program rules is sufficient to establish "corrupt intent" for a conviction under section 666(a)(1)(B), even if in some other respects the participation of the benefitted entity under the program might have been nominally legitimate. *United States v. Hills*, 27 F.4th 1155, 1182 (6th Cir. 2022) ("To corruptly solicit or accept anything of value means that it was done with 'intent to give some advantage inconsistent with official duty and the rights of others.'") Subversion of the admission process for the residency program is inconsistent with official duty and the rights of others — that is so even if AlSaad, Karadsheh, Yacoub, and Salemeh were also all worthy

candidates for the dental residency program." (quoting *United States v. Buendia*, 907 F.3d 399, 402 (6th Cir. 2018)).

Finally, Washington cites *United States v. Owens*, 697 F.3d 657 (7th Cir. 2012), for the proposition that a federal-program bribery conviction cannot be upheld in absence of proof that the amount of the bribe that was given exceeded $5,000. However, in that case the Seventh Circuit explained that "this element of § 666(a) means that the subject matter of the bribe must be valued at $5,000 or more," and "the bribe itself need only be 'anything of value.'" *Id.* at 659 (quoting *United States v. Robinson*, 663 F.3d 265 (7th Cir. 2011)). The $3,000 exchanged in this case certainly comprises "something of value," and there has been no evidence presented to rebut the defendant's admission that the potential value of a towing contract — not to mention multiple placements in the towing rotation — exceeded $5,000.

### III.

The defendant's claims all are foreclosed by her procedural default, and the defendant has not demonstrated cause and prejudice to excuse the default or her actual innocence of the crime of conviction.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate sentence (ECF No. 49) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:  July 28, 2022